DeJEAN CHRISWELL, Plaintiff-Appellant and Cross-Appellee, *v.* EDWARD J. ROSEWELL, Cook County Treasurer, *et al.*, Defendants-Appellees and Cross-Appellants.

First District (4th Division)    No. 78-1142

Opinion filed March 15, 1979.

Coleman T. Holt, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., and Raymond J. Prosser, Assistant State's Attorneys, of counsel), for appellees.

Mr. JUSTICE ROMITI delivered the opinion of the court:

This is an appeal from the trial court's ruling in a mandamus action seeking recovery of back pay.

The issue before this court is whether a probation officer illegally suspended from his position can recover back pay although he waited nearly 3½ years to seek reinstatement. We affirm the trial court's award of back pay from the date reinstatement was sought through the date he was legally discharged. We reverse the trial court's denial of back pay for the period before the demand for reinstatement and remand for an evidentiary hearing on the issue of laches.

The original complaint, filed in June 1977, is not in the record on appeal. The amended complaint alleges that as of October 5, 1973, the plaintiff was employed as a probation officer of the circuit court of Cook County; that on the above date he was arrested and accused of bribery; that he was indefinitely suspended from his position as of that date; that he was acquitted of the charges on March 17, 1977; that he subsequently (March 24, 1977) demanded his reinstatement, but such demand was either ignored or rejected; and that he is entitled to the salary, increases and other emoluments withheld from him subsequent to October 5, 1973. The defendants in their answer admit that the plaintiff was suspended from his position (but on October 4, 1973) without pay; deny that the filing of criminal charges caused the suspension; admit the receipt of the letter demanding reinstatement but deny that it was either ignored or rejected; and state that proceedings to have plaintiff discharged as a probation officer were instituted on December 15, 1977; as affirmative defenses, they contend that the action is barred by the six-month time limitation placed on mandamus actions; that plaintiff was guilty of laches in that he failed to seek reinstatement until March 24, 1977; that the plaintiff is estopped by this delay; that the plaintiff had a duty to mitigate damages; and that the defendants are entitled to deduct payment to the replacement probation officer assigned to handle plaintiff's caseload and job responsibilities; they further contend that as plaintiff was never informed that he would be paid during his suspension and the statute does not provide for payment of salary during a suspension, plaintiff is not entitled to back pay.

Plaintiff then moved to strike the affirmative defenses and for a judgment on the pleadings. Defendants answered this motion and in turn moved for partial judgment on the pleadings on the issue of liability, on the grounds that (1) the complaint fails to show a clear legal right to reinstatement and (2) the 3½-year delay clearly shows plaintiff was guilty of laches. The court on March 2, 1978, after hearing arguments, ruled that the petitioner was entitled to his salary as adult probation officer from March 24, 1977, to, through and including that day when final action

disposing of petitioner's case is taken by the committee of judges of the adult probation department of Cook County. The court further ruled that the defendants were entitled to set off all sums received by the plaintiff as income from employment during that same period.

Both the plaintiff and the defendants moved to have the court reconsider the issues. The defendants' motion was based on the contention (1) that the plaintiff had not shown a clear, legal right to reinstatement, (2) that the plaintiff by delaying until March 24, 1977, is guilty of laches; and (3) that a question of fact remains as to the amount of any set-off of outside earnings, mitigation of damages, and deduction of payments made to a *de facto* employee. Both motions were denied and both sides appealed.

The record also discloses that on December 15, 1977, the Probation Department brought action against Chriswell seeking his discharge and alleging:

1. On October 4, 1973, he was arrested and charged with violation of certain criminal laws of the State of Illinois;

2. that on that date he was suspended from his position because of his arrest and the charges made against him (this is, of course, in direct contradiction to the sworn statement of the defendants that he was not suspended because of the charges);

3. that he did not make any demand that he be rehired during the time the charges were pending;

4. that he was found not guilty on March 17, 1977;

5. that these facts constitute an adequate basis for his discharge.

While it is not in the record, the defendants in their brief state that the plaintiff was discharged on an order of Chief Judge Fitzgerald on July 14, 1978.

Section 13 of the "An Act Providing for a system of probation * * *" (Ill. Rev. Stat. 1973, ch. 38, par. 204—5) provides:

"Any chief probation officer shall have authority to suspend any probation officer under his supervision for a period of not exceeding thirty days, but may not discharge, and it shall be the duty of such chief probation officer promptly to file charges against any probation officer so suspended by him, with the court or judges appointing such probation officer, and said court or judges shall thereupon investigate said charges and may hear evidence, and shall act thereon as the interest of justice and the good of the probation service may require."

It is obvious, and the defendants do not contend otherwise, that defendant Napoli acted without authority in suspending Chriswell for an indefinite period of time.

## I.

█ █ ■ It is well established that an officer or employee unlawfully suspended is entitled to recover the salary lost during the period of suspension where the suspending officer is without authority, or, having power, exerts it in a manner in contravention of statute. (67 C. J. S. *Officers* §221 (1978); 63 Am. Jur. 2d *Public Officers and Employees* §400 (1972).) It is no defense that the employee has not done the work, for if the suspension is unlawful, the suspension "is a mere enforced vacation for which the board must pay him as if he had never been suspended." *State ex rel. Charles v. Board of Commissioners* (1925), 159 La. 69, 77, 105 So. 228, 230, quoted in *State ex rel. Boucher v. Heard* (1955), 228 La. 1078, 1087, 84 So. 2d 827, 830.

█ ■ ■ The defendants, however, contend that the plaintiff cannot recover his back salary because he has failed to prove that he is entitled to be reinstated; in fact he has never in this mandamus action sought reinstatement. It is true, as the defendants contend, that before one is entitled to a writ of mandamus, one must demonstrate a clear legal right to it. (*People ex rel. Council 19 v. Egan* (1977), 52 Ill. App. 3d 1042, 368 N.E.2d 481, *appeal denied* (1978), 67 Ill. 2d 595.) But it does not necessarily follow that before one can recover back pay for an unlawful suspension, one must successfully seek reinstatement. As an employee, plaintiff was entitled to his salary unless and until he was lawfully suspended or discharged. This did not happen until July 14, 1978. It follows, therefore, that plaintiff had a clear legal right to his compensation through that date, absent the establishment of some affirmative defense. In the absence of a lawful suspension or dismissal, there is no necessity, in law or in fact, for a reinstatement. *State ex rel. Boucher v. Heard* (1955), 228 La. 1078, 84 So. 2d 827.

■ We are aware that the Illinois Supreme Court in *City of Chicago v. People ex rel. Gray* (1904), 210 Ill. 84, 71 N.E. 816, indicated that an employee could not seek back pay until after he had been reinstated. However, since the plaintiff in that case had sought reinstatement, and was successful in that attempt, the question whether an employee could ever seek back pay without first establishing a right to be reinstated was not actually before the court. The issue in *Gray* was whether, under the pleading practice current at the turn of the century, a party could seek both remedies, reinstatement and back pay, in the same cause of action. The court held one could not; that the one suit had to precede the other. To require the party to first obtain a declaration that he is entitled to reinstatement ignores the fact that he may be entitled to back pay without being entitled to reinstatement. (*Sullivan v. Atwood* (1939), 290 Mich. 664, 288 N.W. 300.) In *Sullivan*, the plaintiff was illegally dismissed from his position. Subsequently, the statute was amended and the dismissal

became legal. Because of the amendment, the plaintiff was not entitled to reinstatement. He was, however, entitled to back pay from the time of the illegal dismissal until the date the amendment became effective.

## II.

Apparently the trial court agreed with the defendants' contention that merely because the plaintiff delayed 3½ years in demanding reinstatement, he was barred from recovering back pay for the time prior to his demand, both because the plaintiff was guilty of laches and because the plaintiff was required to bring his mandamus action within six months. However, we cannot agree with the trial court that the defendants were entitled to a judgment on the pleadings, since, *inter alia*, the defendants failed to show they were prejudiced by the delay.

It is well established that public policy requires that a public employee illegally suspended or discharged promptly assert his right. (*Brown v. United States* (5th Cir. 1969), 418 F.2d 442; *Harris v. Civil Service Commission*, (1971), 154 W. Va. 705, 178 S.E.2d 842; *Renshaw v. State ex rel. Hickland* (1942), 149 Fla. 342, 5 So. 2d 700; *State ex rel. Martin v. Alford* (1943), 203 La. 232, 13 So. 2d 845.) The doctrine of laches is available to an employer sued by a discharged public employee (*People ex rel. Casey v. Health & Hospitals Governing Com.* (1977), 69 Ill. 2d 108, 370 N.E.2d 499), and it is immaterial whether a dismissal is in conformity with the statute if the plaintiff is guilty of laches or is estopped by his conduct. *State ex rel. Boudreaux v. Alford* (1944), 205 La. 46, 16 So. 2d 901.

In Illinois, a rule has developed that if the mandamus action is not brought within six months of the employee's discharge, it will be barred on the ground of laches unless a reasonable explanation can be given for the delay. (*People ex rel. Ballinger v. O'Connor* (1957), 13 Ill. App. 2d 317, 142 N.E.2d 144; *People ex rel. Cifaldi v. Wilson* (1962), 38 Ill. App. 2d 302, 187 N.E.2d 353; *Kadon v. Board of Fire & Police Commissioners* (1964), 45 Ill. App. 2d 425, 195 N.E.2d 751.) While the court in *Ballinger* characterized that defense as one of laches, the court in *Cifaldi* held that the rules applicable to laches, namely that the mere lapse of time is not enough and that the party claiming laches must prove it was prejudiced by the delay, were not applicable. If the doctrine laid down in *Cifaldi* is the law and is applicable to 'this case, then it is clear the trial court correctly ruled that the defendants' answer raising the six-month limitations was sufficient and properly ruled for the defendants.

We do not believe *Cifaldi* to be controlling here. First, as was pointed out in *People ex rel. Heavey v. Fitzgerald* (1973), 10 Ill. App. 3d 24, 293 N.E.2d 705, the six-month rule is more susceptible of application to cases such as *Ballinger* and *Cifaldi* in which the plaintiff was discharged. In

those cases the plaintiff's status had been administratively determined and channels were open for review; the same is not true here.

■■ More importantly, it does not appear that either *Cifaldi* or *Ballinger* reflect current Illinois law. In *People ex rel. Casey v. Health & Hospitals Governing Com.* (1977), 69 Ill. 2d 108, 370 N.E.2d 499, the majority of the Illinois Supreme Court, apparently rejecting the dissent's contention that the six-month rule barred recovery, held that while a public employer could raise laches as a defense, laches was not simply a matter of time. Rather, the defendant must prove that the plaintiff's unreasonable delay in asserting his rights had prejudiced and misled the defendant, or caused him to pursue a course different from what he would otherwise have taken. If the defendant is not injured by the delay, then the plaintiff is not guilty of laches. In *Casey*, the court allowed the plaintiff to recover since their 23-month delay in filing suit had not prejudiced the defendant or caused it to change its position.

■■■ In the present case, the trial court could only have denied recovery for the period before March 24, 1977, on the theory that delay alone barred recovery since the defendants so far have not shown that they were prejudiced by the delay. This, it is clear from *Casey*, was error. Accordingly, we must reverse and remand for a determination whether the defendants were prejudiced or misled by the plaintiff's failure to seek reinstatement promptly. Obviously, the mere fact that work may have been assigned to someone else during the period from October 1973 to March 1977 would be insufficient if it is not shown that the defendants would have acted differently had the plaintiff sought prompt reinstatement; in that case, defendants would be injured by their own wrongful conduct rather than the plaintiff's inaction. (*People ex rel. Casey v. Health & Hospitals Governing Com.* (1977), 69 Ill. 2d 108, 370 N.E.2d 499.) Furthermore, the plaintiff should be given an opportunity to show that the delay was reasonable. *People ex rel. Heavey v. Fitzgerald* (1973), 10 Ill. App. 3d 24, 293 N.E.2d 705.

### III.

■■ Turning to the cross-appeal, we affirm the trial court's award of salary from March 24, 1977, through the date of discharge. Even if it should be found that the plaintiff was guilty of laches barring recovery for the period before March 24, 1977, the finding could in no way affect the plaintiff's right to recover once the demand had been made. After that, any delay in legally suspending or discharging the plaintiff, if such be proper conduct under the circumstances, or in restoring the plaintiff to duty was the fault of the defendants. Indeed, although the burden is on the cross-appellants to establish that the judgment complained of was erroneous (*Angel v. Angelos* (1976), 35 Ill. App. 3d 905, 342 N.E.2d 748),

they have never contended, either below or on appeal, that they were prejudiced by the plaintiff's conduct or that their conduct after March 24, 1977, was in some way caused by his action or inaction.

As to the defendants' contention on appeal that the judgment should only have awarded back pay from the date the demand was received rather than the date it was sent and that the period should end on the date the defendants were served with process, these contentions were never raised in the trial court and so are not properly before us so far as we can determine from the record. (*Bridges v. Neighbors* (1975), 32 Ill. App. 3d 704, 336 N.E.2d 233.) Furthermore, there is no reason why the plaintiff should forfeit his right to back pay merely because he files suit; it is true that in *Heavey* the appellate court affirmed an award of back pay from the date of demand to the date process was served, but it does not appear that the plaintiff objected to the termination of the award on that date.

Finally, the other contentions raised in the defendants' motion for reconsideration were not argued on appeal and so are waived.

For the foregoing reasons, the judgment of the trial court awarding back pay from March 24, 1977, to the date of discharge is affirmed. The judgment denying back pay from October 4, 1973, to March 24, 1977, is reversed and the cause remanded for further proceedings.

Affirmed in part; reversed and remanded in part.

JIGANTI, P. J., and JOHNSON, J., concur.